IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

MAXWELL SHOE COMPANY, INC.,

    Plaintiff,

v.                                                                Civil Action No. 04-10694 RCL

EDELMAN SHOE COMPANY, LLC and
SAM EDELMAN,

    Defendants.

# PLAINTIFF'S MEMORANDUM IN SUPPORT OF ITS
## MOTION FOR PRELIMINARY INJUNCTION

Michael A. Albert, BBO # 558566
malbert@wolfgreenfield.com
Ilan N. Barzilay, BBO # 643978
ibarzilay@wolfgreenfield.com
WOLF, GREENFIELD & SACKS, P.C.
600 Atlantic Avenue
Boston, Massachusetts 02210
(617) 646.8000 phone
(617) 720.2441 fax

ATTORNEYS FOR PLAINTIFF,
MAXWELL SHOE COMPANY

## TABLE OF CONTENTS

Page

I.    INTRODUCTION………………………………………………………....………....2

II.   FACTUAL BACKGROUND……………………………………………...…..……....4

    A.    Plaintiff And Its Purchase of the
        SAM & LIBBY ® Mark From Edelman……………………………………………4

    B.    Defendants And Their Confusingly Similar Marks……………………….…....…5

III.  ARGUMENT…………………………………………………………….…..……....8

    A.    The Preliminary Injunction Standard……………………………………...……8

    B.    Plaintiff Is Likely To Succeed On The Merits Of Its Trademark Claim…….…...9

        1.    SAM & LIBBY® Is Plaintiff's Incontestable Trademark…………..……...9

        2.    Defendants' Infringing Trademarks Are Likely To Cause Confusion…. 10

            Factor 1 – Similarity of the Marks………………………….................... .10

            Factor 2 – Similarity of the Goods…………………………..…....…..11

            Factors 3, 4 and 5 -
            Channels of Trade, Advertising and Purchasers……………………..…..11

            Factor 6 – Evidence of Actual Confusion……………………………..12

            Factor 7 – Defendant's Intent in Adopting Its Mark…………………...…..12

            Factor 8 – Strength of the Plaintiff's Mark……………………………….14

    C.    Absent An Injunction, Plaintiff Will Suffer Irreparable Harm…………………16

    D.    An Injunction Will Impose Little If Any Cognizable Harm On Defendant………16

    E.    The Public Interest Favors An Injunction To Prevent Confusion……………......17

IV.   CONCLUSION………………………………………………………………………18

## I.    INTRODUCTION

The Defendants sold a valuable trademark and its goodwill for $5.5 million and are now attempting to wrongfully repossess that goodwill by adopting a confusingly similar mark and creating a public perception that they are associated with a mark they no longer own.

Maxwell Shoe Company ("Maxwell") respectfully requests this Court enter a preliminary injunction again Edelman Shoe Company ("ESC") and Sam Edelman ("Edelman") to cease their infringement of Maxwell's footwear trademark SAM & LIBBY® ("the Mark").

This is an unusual trademark infringement case. Eight years ago, Edelman sold Maxwell the Mark at issue. Now, Edelman is attempting to take back the goodwill he previously sold to Plaintiff for substantial consideration. Edelman recently introduced a line of footwear similar in style and in targeted market to Maxwell's SAM & LIBBY® line. He is branding his shoes with two confusingly similar variants of the original Mark: SAMMY E and SAM BY SAM EDELMAN. Defendants' new trade names are so reminiscent of Plaintiff's trademark that they constitute an attempt to repossess the goodwill and other advantages in the marketplace that Defendant sold to Plaintiff for millions of dollars. Defendants' actions infringe Plaintiff's trademark rights.

The Defendants cannot claim innocent infringement. Sam and Libby Edelman, as the original owners of the Mark, made a deliberate choice to sell the SAM & LIBBY® Mark to Maxwell for a princely sum. In so doing, they agreed to no longer use any trade names similar to the Mark. Despite their agreement, Defendants are now marketing products under the names SAMMY E and SAM BY SAM EDELMAN and are creating an impression in the marketplace that their new products are associated with the famous SAM & LIBBY line that they no longer own. Precisely because they did once own it, and because the Mark was originally named after

- 2 -

them, it is especially likely that confusion as to source, origin, or association will result. Federal Exp. Corp. v. Federal Espresso, Inc., 201 F.3d 168, 174 (2nd Cir. 2000) ("The hallmark of infringement…is likelihood of confusion").

Plaintiff's SAM & LIBBY® Mark is a strong, federally registered and incontestable trademark. Plaintiff sells tens of millions of dollars worth of footwear per year under the Mark, and has invested substantial sums in advertising and promoting the Mark. The Mark is so distinctive that no other brand of footwear uses the word "SAM" in its trademark. Indeed, the Mark's strength is confirmed by the $5.5 million dollars Plaintiff paid Edelman to purchase it. Defendants know that the name SAM used on footwear and clothing carries significant goodwill. They also know that that goodwill now belongs to Plaintiff. Edelman's attempt to reintroduce an alternative version of the Mark is a wrongful attempt to trade on the goodwill he sold to Maxwell.

The Defendants' use of marks that they know are confusingly similar to Plaintiff's Mark, for the same types of goods, sold in the same channels of trade, strongly supports a claim of trademark infringement. Such usage makes it likely that consumers will become confused or deceived as to the source, origin or sponsorship of the Defendants' goods.

Absent a preliminary injunction preventing further infringement, the Plaintiff will suffer irreparable harm; indeed, such harm is presumed as a matter of law in trademark cases. The harm to Defendants (if any) from the injunction would be minimal, and in any event was brought by Defendants upon themselves by infringement of a trademark they knew was federally-registered, incontestable, and belonged to someone else.

- 3 -

As discussed below, each of the four preliminary injunction factors    likelihood of success on the merits, irreparable harm, balance of hardships and public interest – weighs heavily in favor of an injunction.

## II.    FACTUAL BACKGROUND

### A.    Plaintiff And Its Purchase of the SAM & LIBBY ® Mark From Edelman

Plaintiff Maxwell Shoe Co. has been in business since 1949. (Declaration of Roger Monks at ¶ 3). Maxwell designs, develops and markets casual and dress footwear for women and children. Id. Maxwell markets its products under a variety of different trade names, including JOAN & DAVID®, J G HOOK®, and DOCKERS®. Id.

In 1988, Edelman created a line of footwear under the trademark SAM & LIBBY®. (Monks Decl. Ex. A). At the time, Edelman was President and CEO of Sam & Libby, Inc., which sold footwear under the Mark. (Monks Decl. ¶ 11). In 1990, Edelman filed for a federal trademark registration, which issued the following year. In 1997, the Mark became incontestable.[1] (Monks Decl. ¶¶ 5-6).[2] The Mark has since become associated with quality footwear and earned significant goodwill.

The Mark became so valuable that in 1996 Edelman sold the Mark and its goodwill to the Plaintiff for approximately $5.5 million. (Monks Decl. ¶ 10). That sale was memorialized in an August 20, 1996 Purchase and Sale Agreement between Maxwell and Sam & Libby, Inc. (hereinafter "the Contract"). Sam and Louise Edelman, individually, were also parties to that Contract.

---

[1] A trademark registration attains "incontestable" status upon filing of an affidavit of five years of continuous use under 15 U.S.C. § 1065. An incontestable registration serves as "conclusive evidence of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce." 15 U.S.C. § 1115(b).

[2] Copies of the federal registrations of the Mark are attached as Exhibit A to the Monks Declaration.

- 4 -

Maxwell is now the registered owner of the Mark. (Monks Decl. ¶ 12, Ex. A). The Mark

is protected by five federal trademark registrations: Reg. Nos. 1,646,905, 1,786,205, 1,772,454,

1,778,203, and 1,898,111. (Monks Decl. ¶ 6 - 9). Each of these registrations is incontestable.

(Monks Decl. ¶ 6).

Once it secured the rights to the Mark SAM & LIBBY®, Plaintiff Maxwell began

investing significant amounts of money in advertising and promoting the SAM & LIBBY®

brand. For example, in 2002, Maxwell spent $914,000 advertising products bearing the Mark.

(Monks Decl. ¶ 13). In 2003, Maxwell spent over $1,114,000 to promote the brand. Id.

Maxwell has advertised the Mark in magazines, including Lucky, Cosmopolitan, and In-Style, as

well as through flyers, mailers, and newspaper advertisements. Id.

Maxwell's products bearing the SAM & LIBBY® Mark are currently sold in over 2,400

retail stores in all 50 states as well as Canada and Puerto Rico. (Monks Decl. ¶ 14). Maxwell

has sold over $100 million in products bearing the Mark over the past four years alone. Id. In

2003, Maxwell sold $26.5 million in products bearing the Mark. Id.

## B.    Defendants And Their Confusingly Similar Marks

Within the past few weeks, Edelman and ESC have introduced two new lines of

footwear, both featuring a variant of the word SAM. (Monks Decl. ¶ 15, 18). The first is

SAMMY E. The second is SAM BY SAM EDELMAN. Defendants have applied to register

these trademarks with the USPTO. (Monks Decl. ¶ 18, Ex. C).

Defendants have begun using these marks in commerce on a line of shoes targeting the

same market as Maxwell's SAM & LIBBY® brand.[3] At least one retailer of which Plaintiff is

---

[3] Plaintiff Maxwell, through its counsel, attempted to send a letter to Defendants demanding that they cease their
infringing activities. The letter was sent to the address provided to the USPTO in Defendants' trademark

aware (prior to any discovery) sells both SAM & LIBBY® shoes and shoes bearing the Defendants' SAMMY E and SAM BY SAM EDELMAN marks. (Monks Decl. ¶ 21, Ex. D).

Defendants' new marks are confusingly similar to Plaintiff's Mark, and the Defendants know it. Indeed, a few weeks ago Edelman made a telephone call to an executive at Maxwell offering to buy back the Mark. (Monks Decl. ¶ 16). Maxwell refused. (Monks Decl. ¶ 17). This refusal, however, did not deter Edelman or ESC from pressing forward with its infringing marks.

To Plaintiff's knowledge, until Edelman began using the above marks, no other footwear manufacturer besides Maxwell used the name "SAM", or any variant thereof, as a trademark. (Monks Decl. ¶ 22). Edelman's marks, SAMMY E and SAM BY SAM EDELMAN both use a variant of "SAM," thereby creating a likelihood that consumers will associate his new line of shoes with the line he previously sold – along with the associated goodwill – to Maxwell.

The products that feature Defendants' marks are the same goods (footwear – specifically, women's work footwear) as those sold by Plaintiff, are sold in the same channels of trade (retail, catalog, and on the Internet), to the same purchasers, in a similar price range, and are advertised in a similar manner. (Monks Decl. ¶ 20 - 21).

An additional factor making Edelman's use of these trademarks especially confusing and misleading is that Edelman himself was formerly associated with SAM & LIBBY®, and indeed the Mark derives from his and his wife's first names. In recently adopting new marks, Edelman did not attempt to distance himself from the SAM & LIBBY® line but rather deliberately chose trade names (SAMMY E and SAM BY SAM EDELMAN) that are confusingly similar to SAM & LIBBY®. Edelman could have chosen any trade name. For example, Edelman did once

---

applications and was sent by Certified Mail. The letter was returned to Maxwell's counsel on March 8, 2004 marked "unclaimed."

before re-enter the shoe business, under the non-infringing trademark "NAKED FEET." That enterprise was unsuccessful and shut down at the end of 2000. (See Monks Decl., Ex. E). Edelman could have used that mark, or any other distinct and independent mark, to identify his new line of footwear. Instead, he deliberately selected names that were as close as possible to the Mark which he sold to Maxwell for $5.5 million. Presumably in the hope of jump-starting his most recent foray into the shoe market, Edelman and his company chose to piggyback on the goodwill associated with the SAM & LIBBY® brand by using confusingly similar trademarks on their new shoe line. Maxwell paid $5.5 million to Edelman for the goodwill associated with the SAM & LIBBY® brand. Edelman is not entitled to sell the goodwill and then later attempt to reclaim its benefits through infringement.

The fact that Edelman is using his name as a trademark does not excuse the infringement. SAM & LIBBY® was originally created by combining the first names of Sam Edelman and Libby Edelman. SAM & LIBBY® developed into a strong brand and developed significant goodwill, which Edelman then sold to Maxwell. Edelman's current trademarks create a likelihood of confusion in the minds of consumers; the addition of Edelman's name in the trademark sense only adds to the confusion as Edelman was once personally associated with the SAM & LIBBY® mark – a connection Edelman has made no effort to distance himself from, and indeed is exploiting to his advantage. Indeed, Edelman's past connection to the SAM & LIBBY Mark has been part of the trade publicity that has surrounded his introduction of the SAMMY E and SAM BY SAM EDELMAN lines. (See Monks Decl. ¶ 25, Ex. E).

In short, Defendants sell the identical type of goods under a confusingly similar mark in the same channels of trade and advertising to the same class of purchasers. This infringing activity is likely to cause confusion among consumers, and should be enjoined.

- 7 -

## III.   ARGUMENT

### A.   The Preliminary Injunction Standard

The four factors to be considered in a preliminary injunction analysis are: (1) the likelihood that plaintiff will succeed on the merits, (2) the risk of irreparable harm to the plaintiff absent an injunction, (3) the balance of hardships and (4) the public interest. Ross-Simons of Warwick, Inc. v. Baccarat, Inc., 102 F.3d 12, 15 (1st Cir. 1996).

In trademark cases, a plaintiff is entitled to a preliminary injunction even without separate proof of irreparable injury, since a showing of likelihood of success creates a presumption of irreparable harm. Societe Des Produits Nestle, S.A. v. Casa Helvetia, Inc., 982 F.2d 633, 640 (1st Cir. 1992); I.P. Lund Trading ApS v. Kohler Co., 163 F.3d 27, 33 (1st Cir. 1998) ("When considering claims based on copyright, trademark or trade dress infringement, irreparable harm may be presumed even in the absence of demonstration of actual injury").

"By its very nature, trademark infringement results in irreparable harm because the attendant loss of profits, goodwill, and reputation cannot be satisfactorily quantified and, thus, the trademark owner cannot adequately be compensated. Hence, irreparable harm flows from an unlawful trademark infringement as a matter of law." Perfumania, Inc. v. Perfulandia, Inc., 279 F. Supp. 2d 86, 103-104 (D. P.R. 2003).

Edelman sold a valuable trademark to Plaintiff for $5.5 million, including the associated goodwill. Inherent in the concept of selling goodwill is the principle that one will not attempt to reclaim those same customers by using a confusingly similar mark. That is what goodwill means. Instead of honoring that agreement, Edelman, through his new company ESC, has re-entered the footwear market using two trademarks confusingly similar to Plaintiff's.

- 8 -

Defendants' use of the marks SAMMY E and SAM BY SAM EDELMAN for the same type of goods sold by Plaintiff under the Mark SAM AND LIBBY® creates a likelihood of confusion among consumers. The harm to Plaintiff from this ongoing trademark infringement is irreparable. See Perfumania, 279 F. Supp. 2d at 104 ("irreparable harm flows from an unlawful trademark infringement as a matter of law"). An injunction would serve the public interest by preventing confusion, and would work little if any cognizable harm to Defendants. Accordingly, Maxwell's motion for preliminary injunction should be granted. Ross-Simons, 102 F.3d at 15.

## B.   Plaintiff Is Likely To Succeed On The Merits Of Its Trademark Claim.

To prevail on its claim for trademark infringement, Maxwell must show: (1) that it owns a protectable trademark; (2) that Defendants are using a similar mark; and (3) that Defendants' use is likely to confuse the public. Star Fin. Serv., Inc. v. Aastar Mortgage, Corp., 89 F.3d 5, 9 (1st Cir. 1996). Maxwell is likely to succeed on all prongs.

### 1.   SAM & LIBBY® Is Plaintiff's Incontestable Trademark.

As noted above, each of Plaintiff's U.S. Trademark Registrations 1,646,905, 1,786,205, 1,772,454, 1,778,203, and 1,898,111 have become incontestable following over five years of continuous use and acceptance by the USPTO of appropriate affidavits.[4] 15 U.S.C. § 1065.

As a matter of law, incontestable registrations provide "conclusive evidence" that the SAM & LIBBY® trademarks are valid, and that Plaintiff enjoys the exclusive right to use them, subject only to a limited number of defenses, see 15 U.S.C. § 1115(b), none of which apply in this case.[5]

---

[4] See Ex. A to Monks Decl.

[5] Defendant would bear the burden of proof on any § 1115(b) defense. See J. Thomas McCarthy, McCarthy on Trademarks § 32:149, p. 32-235 (2003).

Accordingly, Plaintiff's incontestable trademark registrations entitle it to a preliminary

injunction if Defendants' use of the infringing marks creates a likelihood of confusion. Park 'N

Fly, Inc. v. Dollar Park and Fly, Inc., 469 U.S. 189, 205 (1985) ("We conclude that the holder of

a registered mark may rely on incontestability to enjoin infringement.").

## 2.    **Defendants' Infringing Trademarks Are Likely To Cause Confusion.**

To determine whether a likelihood of confusion exists, courts in the First Circuit consider

eight factors: (1) the similarity of the marks; (2) the similarity of the goods; (3) the relationship

between the parties' channels of trade; (4) the relationship between the parties' advertising; (5)

the classes of prospective purchasers; (6) evidence of actual confusion; (7) the defendant's intent

in adopting its mark; and (8) the strength of the plaintiff's mark. Volkswagenwerk

Aktiengesellschaft v. Wheeler, 814 F.2d 812, 817 (1st Cir. 1987). The channels of trade, the

parties' advertising, and classes of prospective purchasers factors are usually analyzed together.

Equine Tech., Inc. v. Equitechnology, Inc., 68 F.3d 542, 546 (1st Cir. 1995). While each factor

must be considered, no one factor is necessarily determinative. Volkswagenwerk, 814 F.2d at

817. The factors are non-exclusive, and are not always apt to the particular facts of a case. I.P.

Lund Trading ApS v. Kohler Co., 163 F.3d 27, 43 (1st Cir. 1998).

### **Factor 1** – **Similarity of the Marks**

The marks here are similar. Plaintiff uses the Mark SAM & LIBBY®. Defendants are

using the marks SAMMY E and SAM BY SAM EDELMAN. The dominant portion of both

parties' marks is SAM. This dominant feature is so distinctive as to be unique – until now, no

other footwear company besides Maxwell used the word SAM in its trademarks. (Monks Decl.

¶ 22). Accordingly, the public is likely to perceive Defendants' marks as similar to Plaintiff's

- 10 -

marks and as emanating from the same source or otherwise being associated with Maxwell's line.

Defendants have done nothing to minimize the public's confusion; on the contrary, they have done the opposite: they have promoted and emphasized the connection. (Monks Decl. Exs. E, F). The First Circuit has repeatedly held that when a party adopts a mark similar to one already in use, it has an affirmative duty to avoid any likelihood of confusion. Boston Athletic Ass'n v. Sullivan, 867 F.2d 22, 29 (1st Cir. 1989); Volkswagenwerk, 814 F.2d at 817. Rather than avoid confusion, Defendants here sought to increase confusion by making their marks as close to SAM & LIBBY® as possible and thereby capitalizing on the goodwill that was sold to Plaintiff.

### Factor 2 – Similarity of the Goods

The goods in question are identical: footwear. In fact, the connection is even closer – both companies sell work footwear for women in approximately the same price range. (Monks Decl. ¶ 20 - 21, Ex. C). This factor therefore also strongly supports a finding of likelihood of confusion.

### Factors 3, 4 and 5 – Channels of Trade, Advertising and Purchasers

The similarity of the parties' channels of trade, advertising and targeted class of consumers also supports the conclusion that confusion is likely. Each of the parties develops, markets and sells footwear. (Monks Decl. ¶ 3, 15). The parties sell through the exact same channels of trade, advertise in the same manner, and sell to the same purchasers, namely women seeking work shoes in approximately the same price range. (Monks Decl. ¶ 15, 20, 21).

In the short time since Defendants came out with their confusingly similar line, there have already been at least two industry trade shows in which both parties have been promoting

- 11 -

their brands in direct competition. At the Miami Shoe Show in February, 2004 and again at the Metropolitan New York Shoe Market show from March 14-16, 2004, shoes from both SAM & LIBBY® and SAMMY E were on display. (Monks Decl. ¶ 20). These industry shows bring together thousands of buyers from retail outlets.

At least one retailer is already selling SAM & LIBBY® and SAMMY E brand shoes, including on an Internet e-commerce site. (Monks Decl. ¶ 21, Ex. D). Because of the close similarity of the marks, the products are adjacent on the website brand list. A purchaser seeking to buy shoes online is likely to be confused between the two brands.

### Factor 6 – Evidence of Actual Confusion

Due to the early posture of this case, evidence of actual confusion is not yet available. A plaintiff in a Lanham Act case need only show a *likelihood* of confusion; a showing of actual confusion is not required. Nestle., 982 F.2d at 640. As numerous courts have recognized, when a plaintiff acts promptly to defend its trademark rights, evidence of actual confusion is of course unlikely. See Tanel Corp. v. Reebok Intern., Ltd., 774 F.Supp. 49, 55 (D. Mass. 1990), citing Volkswagenwerk, 814 F.2d at 818 (where shoes labeled with infringing mark were not yet in retail stores, "it is neither surprising nor significant that plaintiff has not presented evidence of actual confusion.") The point of a request for preliminary relief is precisely to prevent such confusion from occurring in the first place.

### Factor 7 – Defendant's Intent in Adopting Its Mark

This factor weighs strongly in Plaintiff's favor. This is not a case where a Defendant innocently selected a trademark which happened to be similar to one already in use. Here, Defendants were not only well aware of Plaintiff's Mark SAM & LIBBY®, but had already profited handsomely from it, as Edelman had sold the Mark, and its associated goodwill, to the

- 12 -

Plaintiff for $5.5 million dollars. (Monks Decl. ¶ 10). Defendants' choice of the marks SAMMY E and SAM BY SAM EDELMAN is an attempt to capitalize on the goodwill that Edelman had sold for value.

The fact that the marks selected by Edelman include his first name does not excuse trademark infringement. See, e.g., John Walker & Sons, Ltd. v. Bethea, 305 F.Supp. 1302 (D. S.C. 1969) (granting injunction against use of personal name that infringed plaintiff's trademark); Sullivan v. Ed Sullivan Radio & T.V., Inc., 152 N.Y.S.2d 227 (1st Dept. 1956) (same); Champion Spark Plug Co. v. Champion, 23 F.Supp. 638 (D. Mich. 1938) (same). See generally 2 McCarthy on Trademarks and Unfair Competition § 13:15 (4th Ed. 1996) ("If a person whose surname has been legally adopted by a senior user, then severs his ties with that company and goes into business for himself, he has no unqualified right to use his own name, if the result is likelihood of confusion.")

When an infringing party has previously sold his goodwill, "sweeping injunctive relief" to prevent him from attempting to recapture it is warranted. Taylor Wine Co. v. Bully Hill Vineyards, Inc., 569 F.2d 731, 735 (2nd Cir. 1978); accord Levitt Corp. v. Levitt, 593 F.2d 463, 468 (2nd Cir. 1979). In order to protect the property interest of the purchaser in this situation, "the courts will be especially alert to foreclose attempts by the seller to 'keep for himself the essential thing he sold, and also keep the price he got for it[.]'" Levitt, 593 F.2d at 468 (internal citation omitted).

Levitt was a trademark infringement case where the defendant, like Edelman here, had sold his mark to the plaintiff and entered into a non-compete agreement. The court focused on the defendant's prior sale of the mark to justify broad injunctive relief, despite the facts that the mark in question was the defendant's surname and that the non-compete agreement had expired.

- 13 -

"[I]f the district court finds that the seller has attempted to arrogate to himself the trade reputation for which he received valuable consideration, broad remedies may be effected to restore to the plaintiff the value of his purchase." <u>Levitt</u>, 593 F.2d at 468.[6]

Here, Edelman is attempting to "keep for himself the essential thing he sold [the Mark's goodwill], and also keep the price he got for it [\$5.5 million]." <u>Id</u>. (internal citation omitted). He has likewise "attempted to arrogate to himself the trade reputation for which he received valuable consideration." <u>Id</u>.

Edelman implicitly acknowledged that his choice of new marks was inconsistent with his sale of the SAM & LIBBY® Mark when he called Maxwell trying, too late, to buy back the Mark. (<u>See</u> Monks Decl. ¶ 16). SAM & LIBBY® belongs to Maxwell. Maxwell is likely to succeed in showing that Edelman's use of SAMMY E and SAM BY SAM EDELMAN are deliberate infringements of the Mark.

### Factor 8 – Strength of the Plaintiff's Mark

Plaintiff's Mark SAM & LIBBY® is an "arbitrary" mark, which gives it the highest level of protection on the strength (distinctiveness) spectrum. <u>Digital Equip. Corp. v. AltaVista Tech, Inc.</u>, 960 F. Supp. 456, 478 (D. Mass. 1997) <u>citing</u> <u>S.S. Kresge Co. v. United Factory Outlet, Inc.</u>, 598 F.2d 694, 696 (1st Cir. 1979) (noting that arbitrary marks are the marks most deserving of protection); <u>accord</u> <u>The Alta Vista Corporation, Ltd. v. Digital Equip. Corp.</u>, 44 F. Supp. 2d 72, 79-80 (D. Mass. 1998). Arbitrary marks are presumptively strong marks. <u>Stop & Shop v. Big Y Foods</u>, 943 F. Supp. 120, 125 (D. Mass. 1996). <u>See also</u> <u>Virgin Enters. v. Nawab</u>, 335 F.3d 141, 147 (2d Cir. 2003) ("the law accords broad, muscular protection to marks that are

---

[6] The court approved an injunction enjoining the seller from publicizing his participation in a new venture, even though this restriction exceeded the scope of the parties' then-expired non-compete agreement. <u>Id.</u>, 593 F.2d at 469.

arbitrary or fanciful in relation to the products on which they are used").

The SAM & LIBBY® Mark is also federally-registered and incontestable. (Monks Decl. ¶¶ 6-9, Ex. A). As discussed above, these factors add to its strength.

The Mark has been in use since 1988. (Monks Decl. Ex. A). See Equine, 68 F.3d at 547 (finding a mark strong after four years of use). It is well known in the industry, and widely recognized by consumers. (Monks Decl. ¶ 4). See Keds Corp. v. Renee Int'l Trading Corp., 888 F.2d 215, 222 (1st Cir. 1989) ("relative renown in its field" adds to a trademark's strength). No one else uses the name SAM in footwear other than Maxwell. (Monks Decl. ¶ 22). See Lambda Electronics Corporation v. Lambda Technology, Inc., 515 F.Supp. 915, 925 (S.D.N.Y. 1981) (presence of similar marks on similar products relevant to strength of mark). Moreover, Defendant sold the Mark, and its goodwill, to Plaintiff for $5.5 million. (Monks Decl. ¶ 10). That fact alone demonstrates its value and distinctiveness.

Further evidence of the strength of the SAM & LIBBY® mark comes from the fact that Plaintiff has tens of millions of dollars in sales per year in connection therewith, and spends over a million dollars per year in related advertising. (Monks Decl. ¶¶ 13-14). See Keds, 888 F.2d at 222 (extensive advertising is evidence of a strong mark); Volkswagenwerk, 814 F.2d at 819 (high sales volume part of "considerable evidence" of strong mark).

The lack of any mark similar to SAM & LIBBY® in the footwear industry further adds to the strength of the mark and the protection it deserves. See Lambda, 515 F.Supp. at 925.

In short, this factor strongly supports a finding that confusion is likely.

\* \* \*

The eight Volkswagenwerk factors, taken as a whole, strongly support a finding that confusion between Defendants' marks and Plaintiff's SAM & LIBBY® Mark is likely.

### C.    Absent An Injunction, Plaintiff Will Suffer Irreparable Harm.

If Defendants are permitted to continue their infringement, Plaintiff's image, reputation,

market position and ability to control its trademarks and standards will be in jeopardy. The

resulting damage to Plaintiff will be irreparable. (Monks Decl. ¶ 23).

The First Circuit, and district courts within it, have consistently held that trademark

infringement automatically leads to irreparable harm. Nestle, 482 F.2d at 640 (likelihood of

success in trademark case establishes presumption of irreparable harm); I.P. Lund, 163 F.3d at

33 (in trademark cases, "irreparable harm may be presumed"); Keds, 888 F.2d at 220 (same);

Camel Hair & Cashmere Inst. of Am., Inc. v. Associated Dry Goods Corp., 799 F.2d 6, 14 (1st

Cir. 1986) ("There is considerable authority for the view that the irreparable injury requirement

is satisfied once it is shown that the defendant is wrongfully trading on the plaintiff's

reputation.").

There can be no question that Plaintiff stands to suffer irreparable harm unless the

requested preliminary injunction is granted.

### D.    An Injunction Will Impose Little If Any Cognizable Harm On Defendants.

An injunction would not stop Defendants from competing in the women's work shoe

market, nor would it shut down his factories or deprive him of suppliers or customers. Entry of

the requested injunction would require only that Defendants stop infringing Plaintiff's SAM &

LIBBY® Mark. Defendants would still be able to carry on their business as usual, under a

different trademark. For example, Edelman could resume use of the NAKED FEET mark that he

had previously adopted for an earlier incarnation of his footwear business. In fact, just about any

mark that doesn't use the name Sam (or Libby) would likely be an acceptable alternative. Since

Defendants have only recently initiated the infringing activity, any harm in adopting a suitable

- 16 -

mark would be minimal. Any harm or expense resulting from the change would, in any event, be

of Defendants' own doing, having gone into this situation with their eyes wide open (and $5.5

million of Maxwell's money in their pockets). See Schawbel Corp. v. Conair Corp., 122

F.Supp.2d 71, 85 (D. Mass. 2000) (where harm to defendant is of defendants own doing, plaintiff

prevailed on balance of harms). As a court in this District noted in a similar case,

> an injunction at this time would restrain [the defendant] at the very beginning of
> its sales efforts, nipping the operation in the bud. Should we deny preliminary
> relief, [the defendant] may be more firmly entrenched in the American market by
> the time of trial, making permanent relief more problematical. Under these
> circumstances, a preliminary injunction is in one sense 'an act of kindness' to the
> defendant, since "[i]t cuts him off from a business life which, from all the
> portents, would involve a series of trademark frustrations."

Trak Inc. v. Benner Ski KG, 475 F. Supp. 1076, 1078 (D. Mass. 1979) (internal citation omitted).

As a practical matter, Defendants would simply have to choose another trade name and

cease use of the present marks. The balance of hardships favors entry of the injunction.

### E.     The Public Interest Favors An Injunction To Prevent Confusion.

It is well established that the public interest favors granting a preliminary injunction to

prevent confusion of consumers as a result of a defendant's trademark infringement. Digital

Equip. v. Altavista, 960 F. Supp. at 472, citing Hypertherm, Inc. v. Precision Prods., Inc., 832

F.2d 697, 700 (1st Cir. 1987) (where plaintiff shows likelihood of success on the merits, issuance

of preliminary injunction serves the public interest "given the societal value of full disclosure

and fair competition, together with the policy of the law to provide at least minimal protection to

established trade names."). See also Calamari Fisheries, Inc. v. The Village Catch, Inc., 698 F.

Supp. 994, 1015 (D. Mass. 1988) ("[p]reventing consumer confusion is clearly in the public

interest.").

In this case, the public interest plainly favors preventing the confusion that is likely to result from continued infringement by Defendants of Plaintiff's SAM & LIBBY® trademark.

## IV.    CONCLUSION

Edelman sold the SAM & LIBBY® Mark and its goodwill to Maxwell for $5.5 million. Now that he has re-entered the footwear industry, instead of choosing trademarks that will distinctly identify his products in the marketplace, Edelman has chosen marks that are so close to Maxwell's Mark that they will invariably be confused with the Mark and wrongfully benefit from its goodwill. Edelman's trademark infringement will irreparably harm Maxwell. Plaintiff respectfully requests that the Court grant Maxwell's Motion and preliminarily enjoin Edelman from further confusing the marketplace with its infringing trademarks.

Respectfully submitted,

MAXWELL SHOE COMPANY, INC.

By its counsel,

Dated: April 6, 2004

Michael A. Albert, BBO # 558566
malbert@wolfgreenfield.com
Ilan N. Barzilay, BBO # 643978
ibarzilay@wolfgreenfield.com
WOLF, GREENFIELD & SACKS, P.C.
600 Atlantic Avenue
Boston, Massachusetts 02210
(617) 646.8000 phone
(617) 720.2441 fax

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

MAXWELL SHOE COMPANY, INC.,

Plaintiff,

v.

EDELMAN SHOE COMPANY, LLC and
SAM EDELMAN,

Defendants.

Civil Action No. 04-10694 RCL

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the following documents were served upon the
parties listed below:

1.    COMPLAINT AND JURY DEMAND

2.    PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION with
      [PROPOSED] PRELIMINARY INJUNCTION ORDER

3.    PLAINTIFF'S MEMORANDUM IN SUPPORT OF ITS
      MOTION FOR PRELIMINARY INJUNCTION

4.    DECLARATION OF ROGER MONKS

By Hand Delivery to Registered Service Agent on April 7, 2004

Edelman Shoe Company LLC
c/o Corporation Service Company
2711 Centerville Road, Suite 400
Wilmington, DE  19808

By Certified Express Mail mailed on April 6, 2004

Sam Edelman
11 Old Stage Coach Road
Ridgefield, CT  06877

Ilan N. Barzilay