IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

MAXWELL SHOE COMPANY, INC.,

                Plaintiff,

      v.

EDELMAN SHOE COMPANY, LLC and
SAM EDELMAN,

                Defendants.

Civil Action No. 04-10694 RCL

**DEFENDANTS EDELMAN SHOE COMPANY, LLC AND
SAM EDELMAN'S MEMORANDUM IN OPPOSITION TO
MOTION FOR PRELIMINARY INJUNCTION**

Jeffrey L. Snow
jsnow@kl.com
Christopher Centurelli
ccenturelli@kl.com
Robert T. Milanette
rmilanette@kl.com
KIRKPATRICK & LOCKHART LLP
75 State Street
Boston, Massachusetts 02109
617.261.3100  phone
617.261.3175  fax

ATTORNEYS FOR DEFENDANTS
EDELMAN SHOE COMPANY, LLC and
SAM EDELMAN

*Of Counsel:*
Mark I. Peroff
mperoff@kl.com
Darren W. Saunders
dsaunders@kl.com
KIRKPATRICK & LOCKHART LLP
599 Lexington Avenue
New York, New York  10022

212.536.3900  phone
212.536.3901  fax

## TABLE OF CONTENTS

**Page**

I.      PRELIMINARY STATEMENT ....................................................................................... 1

II.     FACTS ....................................................................................................................... 3

       A.    Sam Edelman and his Achievements  and Reputation in the Shoe Industry........... 3

       B.    The Sale of the SAM & LIBBY Mark to Plaintiff  and the Agreement
             Executed by the Parties Regarding  Future Use of the Name "Sam
             Edelman" by Mr. Edelman.................................................................................... 4

       C.    Mr. Edelman's Re-Entry into the Footwear Business............................................ 6

III.    ARGUMENT .............................................................................................................. 7

       A.    A Preliminary Injunction is an Extraordinary Remedy.......................................... 7

       B.    Plaintiff is Not Likely to Succeed on the Merits of its Trademark Claim .............. 7

             1.    Plaintiff Expressly Consented to Edelman's Use of His Name as a
                   Trademark for Footwear........................................................................... 7

             2.    There is No Likelihood of Confusion ....................................................... 8

                   a.    The Marks Convey Entirely Distinct  Commercial
                         Impressions ................................................................................... 9

                   b.    The Parties' Products Are Targeted to Different
                         Purchasing Audiences ................................................................. 10

                   c.    Mr. Edelman Adopted the Marks SAM BY SAM
                         EDELMAN and SAMMY E In Good Faith ................................. 11

       C.    Because Plaintiff Has Not Demonstrated a Likelihood of Success on the
             Merits, It May Not Rely on a Presumption of Irreparable Harm ......................... 13

       D.    An Injunction Would Severely Disrupt Mr. Edelman's Business  and
             Would Cause Substantial Harm .......................................................................... 14

       E.    There is no Likelihood of Confusion, and Therefore No "Public Interest"
             to Protect .......................................................................................................... 14

IV.     CONCLUSION ................................................................ **Error! Bookmark not defined.**

BOS-676702 v1 0821198-0002

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

MAXWELL SHOE COMPANY, INC.,

                Plaintiff,

      v.

EDELMAN SHOE COMPANY, LLC and
SAM EDELMAN,

              Defendants.

Civil Action No. 04-10694 RCL

**DEFENDANTS EDELMAN SHOE COMPANY, LLC AND
SAM EDELMAN'S MEMORANDUM IN OPPOSITION TO
MOTION FOR PRELIMINARY INJUNCTION**

Defendants Edelman Shoe Company, LLC ("Edelman Shoe") and Sam Edelman hereby
oppose plaintiff Maxwell Shoe Company, Inc.'s ("Maxwell Shoe") Motion for Preliminary
Injunction.

**I.     PRELIMINARY STATEMENT**

Plaintiff's motion for a preliminary injunction should be denied because Maxwell Shoe
consented in a written agreement to defendant Sam Edelman's use of his name in or on footwear
products.  Having consented to Mr. Edelman's use of his name for shoes, Maxwell Shoe is
estopped from bringing a claim for trademark infringement.  Accordingly, plaintiff cannot
demonstrate a likelihood of success on the merits of its claim, and therefore it is not entitled to
the drastic remedy of a preliminary injunction.

Plaintiff's motion and this action are extraordinary in one respect - - although Maxwell
Shoe is well aware of the provision in the agreement between the parties that grants Mr. Edelman

the right to use his name for footwear products, as he is now doing, plaintiff does not address or acknowledge it anywhere in its motion papers or in the complaint.  Instead of addressing the consent, plaintiff pretends that it does not exist.  For example, in the complaint *plaintiff quoted the section of the purchase agreement that contains the consent,  twice, but in both quotations it omitted the relevant provision* (without ellipses or any other indication to the Court that it omitted text.)  (See Complaint, ¶¶9, 56).  Also, Maxwell Shoe has filed an 18-page brief in support of the motion for preliminary injunction without mentioning, quoting or referring to the consent provision, resulting in an extremely misleading presentation to the Court.  Maxwell Shoes' "omissions" are egregious because the consent provision is dispositive of plaintiff's claims.

Defendant Sam Edelman is a nationally renowned shoe designer who has spent his entire 30-year career in the shoe business.  Mr. Edelman has achieved great acclaim, success and notoriety over his career, and his reputation among the trade is synonymous with fashion shoe design.  Therefore, it was paramount for Mr. Edelman to have the ability to continue to use his name for shoes after the sale of the SAM & LIBBY brand to Maxwell Shoe.  Accordingly, the agreement between the parties, which was carefully negotiated over months, provides Mr. Edelman the unlimited right to use his name for footwear after a three-year period of non-use (which expired on July 26, 1999).

Plaintiff's motion papers create the misimpression that Mr. Edelman is engaging in unscrupulous behavior, when in fact he is competing fairly and within his right as agreed by Maxwell Shoe and memorialized in the contract executed by the parties.  Because plaintiff granted Mr. Edelman the express right to use his name to sell shoes, this motion and this action are without merit.

Moreover, assuming *arguendo* the plaintiff had not consented to Mr. Edelman's use of his name, there is no likelihood of confusion between the marks SAMMY E and SAM EDELMAN on the one hand, and SAM & LIBBY on the other, for shoes. Maxwell Shoe contravenes fundamentals of trademark law by improperly dissecting the parties' marks and by comparing them in the abstract instead of under actual purchasing and marketplace conditions, as the law requires. When properly compared in the context in which the marks are actually used and encountered, the marks convey distinct commercial impressions, such that no likelihood of confusion exists.

Admittedly, Maxwell Shoe did not contact Mr. Edelman before filing the complaint and the motion for preliminary injunction, notwithstanding that the plaintiff was aware of Mr. Edelman's plans to reenter the shoe business using the SAMMY E and SAM EDELMAN marks in January 2004. Instead, Maxwell Shoe waited until April 2004 to bring the action and this motion. By that time, Mr. Edelman had completed the steps to manufacture and begin to sell his new lines of shoes. This conduct severely undercuts Maxwell Shoe's claim of irreparable injury and brings into question plaintiff's motives in the timing of the motion.

A preliminary injunction would be devastating to Edelman Shoe's business and would likely result in the company having to cease operations. Because the plaintiff has not demonstrated a likelihood of success on the merits and is not incurring irreparable injury, the motion for preliminary injunction should be denied.

## II.    FACTS

### A.    Sam Edelman and his Achievements and Reputation in the Shoe Industry

Defendant Sam Edelman is an entrepreneur and accomplished designer and marketer of fashion footwear. Mr. Edelman has worked in the shoe business for his entire 30-year career.

(Edelman Decl. ¶ 2).  He is responsible for the success of shoe brands that have become household names, including CANDIES, KENNETH COLE and ESPRIT.  (Edelman Decl. ¶¶ 4-5).  Mr. Edelman is highly regarded by the trade as one of the leading designers and marketers of shoes in the entire footwear industry.

In 1987 Mr. Edelman left Esprit to form Sam & Libby Footwear, which launched the SAM & LIBBY brand of shoes.  (Edelman Decl. ¶ 6).  As Mr. Edelman had done with the brands on which he previously worked, he turned the SAM & LIBBY brand into a great success. Mr. Edelman attributes his abilities and successes to his instinctive sense of being able to detect a consumer need or void in the market and to fill it by designing a line of shoes that is fresh, stylish and current, while meeting the needs of consumers.  (Edelman Decl. ¶ 6).

Mr. Edelman has received awards and honors for his achievements, including, with his wife Libby, "Entrepreneurs of the Year" by Ernst and Young in 1989.  (Edelman Decl. ¶ 7).

**B.    The Sale of the SAM & LIBBY Mark to Plaintiff
and the Agreement Executed by the Parties Regarding
Future Use of the Name "Sam Edelman" by Mr. Edelman**

In 1996, Sam Edelman and Libby Edelman, through their prior company Sam & Libby, Inc., sold the SAM & LIBBY trademark to plaintiff Maxwell Shoe.  In connection with the sale, the parties entered into an agreement entitled "Trademark and Intellectual Property Rights Purchase and Sale Agreement," dated July 2, 1996 (the "Purchase Agreement").  The Purchase Agreement was negotiated over a period of several months. (Sitomer Decl. ¶4).

Among the issues negotiated and addressed in the Purchase Agreement is the use by Mr. Edelman of his name for footwear and apparel products subsequent to the sale of the SAM & LIBBY mark.  Initially, Maxwell Shoe did not want Mr. Edelman to have any right to use his name in connection with the sale of shoes at anytime after the consummation of the agreement.

(Sitomer Decl. ¶5). In response, Kenneth Sitomer, who at the time was Chief Operating Officer and Chief Financial Officer of Sam & Libby, Inc., and who signed the agreement on behalf of the company, informed representatives of Maxwell Shoe that Mr. Edelman would not agree to such a term. *Id.*

In view of Mr. Edelman's national reputation as a leader in the footwear industry, and the fact that he has spent his entire career designing and selling footwear, Mr. Edelman was emphatic that he would not sell the SAM & LIBBY trademark if he could not use his name in connection with the sale of the footwear in the future. (Sitomer Decl. ¶ 5; Edelman Decl. ¶ 9). Accordingly, Mr. Sitomer explained to Maxwell Shoe that Mr. Edelman must be free to use his name in the future in connection with footwear. (Sitomer Decl. ¶ 5).

The parties eventually agreed that Mr. Edelman would refrain from using his name or any similar names on footwear and apparel products for three years. (Sitomer Decl. ¶ 7; Edelman Decl. ¶ 10). The three-year restriction was thought to be a sufficient time for Maxwell Shoe to distance the SAM & LIBBY brand, without placing an unreasonable restriction on Mr. Edelman's use of his name in his trade. *Id.* The parties agreed on the following language:

> Each of Buyer and Seller agrees that after July 25, 1996, neither will in any way utilize or display either of the names "Sam Edelman" or "Libby Edelman," or any names similar to such names, in or on product of Buyer or Seller. Each of Samuel L. Edelman and Louise B. Edelman agree not to use either of the names "Sam Edelman" or "Libby Edelman," or any names similar to such names, appearing in or on any footwear product or apparel product for three years from July 25, 1996.

(Sitomer Decl. ¶ 4, Ex. A, § 9.10 p.6). The first sentence of the section applies to the two corporate entities in the transaction, i.e., the Buyer (Maxwell Shoe) and the Seller (Sam & Libby, Inc.). Each of those entities undertook not to use or display the names Sam Edelman or Libby Edelman or similar names on any of their products after the sale of the SAM & LIBBY brand

name.  That is, the corporate entities recognized and agreed that the rights to use the proper

names Sam Edelman and Libby Edelman belonged exclusively to those individuals.

The second sentence of the section applies to the individuals, Sam Edelman and Libby

Edelman, and memorializes the parties' agreement concerning the three-year period of non-use

of the names by the individuals.  Per the agreement of the parties, the Edelman's were free to use

their names "in or on any footwear product" after July 26, 1999.

### C.     Mr. Edelman's Re-Entry into the Footwear Business

In 2003, Mr. Edelman recognized a void in the shoe market for fashion-conscious

individuals who want high quality, original design, fashion shoes without spending hundreds of

dollars. (Edelman Decl. ¶ 12).  He decided to re-enter the shoe business and started Edelman

Shoe Company LLC.  Mr. Edelman began to create new shoe designs to fill the void.  According

to Mr. Edelman: "My customer is a woman who is driving a Mercedes, has 2.2 kids and would

like to spend $400 on her shoes, but she just can't."  *Id.*

Mr. Edelman created two lines of shoes, a moderate priced line called SAM EDELMAN[1]

and a lower-priced line called SAMMY E.  Mr. Edelman began to promote the new lines of

shoes to the trade in February of 2004.  Currently his company has received orders for

approximately 70,000 pairs of shoes from retailers throughout the country.  (Edelman Decl. ¶

18).  Edelman Shoe is committed to begin delivery of the products in early July. [2]

---

[1] Originally this line was named SAM BY SAM EDELMAN but Mr. Edelman was not happy with this brand name and therefore changed it to SAM EDELMAN.  (Edelman Decl. ¶ 14).

[2] Maxwell Shoe attempts to make significance of the fact that Mr. Edelman recently inquired as to whether the SAM & LIBBY mark was available for purchase.  (Maxwell Br. p.6).  However, this inquiry is innocuous as it had no relation to the present dispute.  Recently, Mr. Edelman was approached by a group of individuals about developing a designer line of shoes for a mass market retailer, similar to Isaac Mizrahi for Target.  (Edelman Decl. ¶ 20).  One of these individuals had asked Mr. Edelman whether the SAM & LIBBY mark might be available for this project.  *Id.* This is the reason that Mr. Edelman made the inquiry, which was completely unrelated to his use of the SAMMY E and SAM EDELMAN marks.

## III.    ARGUMENT

### A.    A Preliminary Injunction is an Extraordinary Remedy

"A preliminary injunction is a 'drastic and extraordinary remedy that is not to be routinely granted.'" *Abbott Labs. v. Selfcare, Inc.,* 17 F. Supp. 2d 43, 51 (D. Mass. 1998).  Judge Gertner of this Court has emphasized the extraordinary nature of preliminary injunctive relief:

> A preliminary injunction is an extraordinary equitable remedy.  It requires intervention by the Court on an emergency basis, without the usual careful procedures and litigation methods -  - the exchange of information in discovery, evidentiary hearings, the full and complete briefing of the issues.  As such, the law imposes on Plaintiffs the substantial burden of convincing the Court that they are likely to succeed ultimately and further, that if emergency relief is not granted, they will be "irreparably" harmed.

*Boston Children First v. City of Boston*, 62 F. Supp. 2d 247, 253 (D. Mass. 1999).  Here, Plaintiff has not come close to meeting the substantial burden of convincing the Court that it is likely to succeed ultimately, nor has it presented evidence of any irreparable harm.

### B.    Plaintiff is Not Likely to Succeed on the Merits of its Trademark Claim

#### 1.    Plaintiff Expressly Consented to Edelman's Use of His Name as a Trademark for Footwear

It is elemental that, where a trademark owner consents to another's use of a mark, such use cannot be an infringing use as a matter of law. The Trademark Act of 1946 ("Lanham Act") provides that a claim for infringement exists only where the use of the mark is "without the consent of the registrant." 15 U.S.C. § 1114.  *See also* 5 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition, § 32:105 (4th ed 2004) (consent of the trademark owner creates an estoppel to a claim of infringement).

Here, the Purchase Agreement provides Mr. Edelman and his wife with the right to use their names, "or any names similar to such names, appearing in or on any footwear product" after July 25, 1999.  (Purchase Agreement, Sitomer Decl. ¶ 4, Ex. A., ¶ 9.10, p.6).  The provision

could not be worded more clearly.  In using the names SAMMY E and SAM EDELMAN for shoes, Mr. Edelman is doing precisely what Maxwell Shoe granted him the right to do.  Hence there can be no claim for trademark infringement based upon Mr. Edelman's use of his name in or on shoes.  For this reason alone, the motion for preliminary injunction should be denied.[3]

## 2.    There is No Likelihood of Confusion

Under a proper analysis of the relevant likelihood of confusion factors, there is no likelihood of confusion between Edelman Shoes' SAMMY E and SAM EDELMAN marks and the mark SAM & LIBBY.  The courts in this Circuit examine the following factors to assess a likelihood of confusion:

> 1) the similarity of the marks;  2) the similarity of the goods;  3) the relationship between the parties' channels of trade;  4) the relationship between the parties' advertising;  5) the classes of prospective purchasers;  6) evidence of actual confusion;  7) the defendants' intent in adopting its mark; and 8) the strength of the plaintiff's mark.

*Pignons S.A. de Mecanique de Precision v. Polaroid Corp.*, 657 F.2d 482, 487 (1st Cir. 1981).  Not all of the factors are relevant in every case and the court need not attribute equal weight to each factor.  In some cases, only a few factors may be dispositive of a likelihood or no likelihood of confusion. *New England Cord Blood Bank, Inc. v. Alpha Cord, Inc.,* 2004 U.S. Dist. Lexis 1197, *12 (D. Mass. Jan. 21, 2004); *Checkpoint Systems, Inc. v. Check Point Software Technology, Inc.,* 269 F. 3d 270 (3rd Cir. 2001).

In order to prove a claim for trademark infringement, Maxwell Shoe must demonstrate that an appreciable number of the relevant purchasing audience is likely to

---

[3]    Having omitted any mention of the consent provision in its papers, it is anticipated, to the extent that the Court permits Maxwell Shoe to file a reply brief, plaintiff will strain to argue that the consent permits the use of Mr. Edelman's name for shoes, but not as a trademark.  Such an argument would be baseless because the use of a name "on or in" a product to denote its source, as Mr. Edelman is doing pursuant to the Purchase Agreement, is a trademark use by definition.  *See* 15 U.S.C. §1127. Moreover, this argument would be contrary to Maxwell Shoe's allegations in the complaint.  See complaint, ¶¶ 55-57.

be confused. *International Ass'n of Machinists and Aerospace Workers v. Winship Green Nursing Center* 103 F.3d 196, 201 (1st Cir. 1996). Here, there is no likelihood of confusion, much less a likelihood of confusion among an appreciable number of purchasers.

### a.    The Marks Convey Entirely Distinct Commercial Impressions

When comparing marks in the likelihood of confusion analysis, it is improper to dissect the marks or to focus on only one element where other elements are of equal prominence. *Opryland USA Inc. v. The Great American Music Show Inc.*, 970 F. 2d 847, 23 USPQ 2d 1471, 1473 (Fed. Cir. 1992). But this is precisely what Maxwell Shoe has done. Maxwell Shoe focuses solely on the element "SAM," while disregarding the other elements of its mark "& LIBBY." (See Maxwell Br. pp. 6, 10-11). This is improper. The reason that the law requires marks to be considered in their entireties is, consumers do not engage in the mental gymnastics of dissecting marks in the purchasing environment. Rather, consumers perceive trademarks as they are actually presented on or in connection with the product in the marketplace. McCarthy, § 23:41. [4]

When viewed in their entirety and in the proper context, SAMMY E and SAM EDELMAN are distinct from SAM & LIBBY. The "& LIBBY" portion of the plaintiff's mark, looks, sounds and connotes something very different from the man's nickname "SAMMY E" or the name "SAM EDELMAN." These elements cannot conveniently be disregarded in the analysis, as plaintiff has done, because the ampersand and woman's name LIBBY engender an impression and connotation that are distinct from Mr. Edelman's name alone.

---

[4]    Maxwell Shoe argues that the "dominant portion of both parties marks is SAM." (Maxwell Br. p.10). Obviously, this is not true. In the plaintiff's mark, the name LIBBY is equally prominent to SAM, and, thus, there is no dominant portion. Similarly, in defendants' marks, "SAM" does not dominate over "EDELMAN" and, simply put, SAMMY is different from SAM, (just as Sam is different from Samuel).

Importantly, consumers are confronted in stores with numerous marks for shoes, many of which consist of proper names that share a common first name:  ANN MARINO, ANNE JORDAN, ANNE KLEIN, ANNE MICHELLE; CHARLES ALBERT, CHARLES DAVID; NANCY GEIST, NANCY LI, among many others. (Edelman Decl. ¶ 16).  Thus, consumers are accustomed to differentiating between brands of shoes that contain the same first name, i.e., "Anne."

A fundamental flaw in Maxwell Shoes' argument is it presupposes that consumers are knowledgeable that Sam Edelman is the "SAM" of "SAM & LIBBY."  But this is pure speculation, with no evidentiary support.  Maxwell Shoe has presented no evidence that any consumer is likely to associate Sam Edelman with "SAM & LIBBY" such that they would confuse the source of the defendants' goods.  Contrary to Maxwell Shoes' argument, in view of the multitude of names used on and in shoes, the name "Sam" is no more distinctive to an ordinary consumer than any other given name used for shoes, i.e., Anne, Charles, Nancy, etc.

In the context of the actual marketplace, there is no likelihood that an appreciable number of consumers will be confused by Mr. Edelman's trademarks SAMMY E and SAM EDELMAN.

### b. The Parties' Products Are Targeted to Different Purchasing Audiences

Maxwell Shoe contends that the parties "sell to the same purchasers" (Maxwell Br. p.11).  This is an over simplification and is inaccurate.  Women's shoes can be categorized into various market segments, based principally on price point and style.  (Edelman Decl. ¶ 15).  In the present case, the parties' shoe lines are sold at different price points and are targeted to different purchasing audiences.  Maxwell Shoes' products are sold at a low price point and are targeted mainly to teens, whereas Edelman Shoes' SAM EDELMAN brand is sold at a midlevel price point and are targeted to women aged 25-55.  (Edelman Decl. ¶ 15).  These two separate

categories of footwear are sold in different departments by virtually all major department stores. *Id*. This factor further supports a finding of no likelihood of confusion.

### c. Mr. Edelman Adopted the Marks SAM BY SAM EDELMAN and SAMMY E In Good Faith

There are a number of factors which demonstrate that Mr. Edelman adopted the marks SAMMY E and SAM EDELMAN in good faith. First, the marks are his name and the Purchase Agreement permits Mr. Edelman to use his name for shoes. The use by a party of a name which he is expressly given the right to use by contract evidences good faith adoption. Second, Mr. Edelman sought the opinion of counsel before adopting and using the marks. (Edelman Decl. ¶ 13). Good faith reliance on a competent opinion of counsel evidences good faith adoption of a mark. *DeCosta v. Viacom International, Inc.*, 981 F.2d 602, 611 (1st Cir. 1992). Third, Mr. Edelman has created entirely new designs and styles for two unique lines of shoes that he is introducing under a new company and new brands. Therefore, he has no desire for his new lines of shoes to be associated with Maxwell Shoe or the SAM & LIBBY brand. (Edelman Decl. ¶ 17). Fourth, Mr. Edelman designed typeface and logos for his new marks that are distinct from the SAM & LIBBY logo. *Id.*

Plaintiff's arguments, and the cases cited in Maxwell Shoe's brief on this factor, are irrelevant because, unlike here, they address the situation of the defendant *using the precise name that it had previously sold to the plaintiff*. For example, in the *Levitt* case, discussed at pages 13-14 of plaintiff's brief, Mr. Levitt had sold his name "Levitt" and later began to use the precise name that he sold for the same services. *See Levitt Corp. v. Levitt,* 593 F.2d 463 (2d Cir.

1979).[5]  Clearly, Edelman Shoe is not using the SAM & LIBBY mark that it sold to Maxwell

Shoe, thus rendering plaintiff's argument superfluous.

 Moreover, the *Taylor Wine* case, cited by plaintiff, supports the defendants' position.  In

*Taylor Wine*, and the other cases discussed therein, the courts refused to enjoin the defendants'

use of their names, noting the need for an individual to be able to use his name in connection

with his trade:

> [T]o prohibit an individual from using his true family surname is to
> take away his identity: without it he cannot make known who he is
> to those who may wish to deal with him; and that is so grievous an
> injury that courts will avoid imposing it, if they possibly can.
> (citation omitted).

*Taylor Wine Co., Inc. v. Bully Hill Vineyards, Inc.*, 569 F.2d 731, 735 (2d Cir. 1978).  Thus, to

the extent that Maxwell Shoe contends that Mr. Edelman's use of the mark SAM EDELMAN

infringes the SAM & LIBBY trademark, the *Taylor Wine* case is contrary to the plaintiff's

position.  *Taylor Wine* demonstrates the courts' acknowledgment of the reality that one who has

established a reputation in his area of trade, such as Mr. Edelman, must be free to use his name in

good faith in connection with that trade.  Thus, Maxwell Shoes' reliance on *Taylor Wine* is

seriously misplaced.

 In sum, the plaintiff's arguments and the cases it cites do nothing to change the fact that

Mr. Edelman adopted his marks in good faith.

---

[5] In stark contrast to the present case, in *Levitt*, Mr. Levitt specifically acknowledged in an agreement
executed in connection with the transfer of all of his trademarks that "he does not have, *either now or at
any time in the future* the right to use the name 'Levitt' alone or in conjunction with any other names or
words…"  *Id.* at 465 n.4 (emphasis added).  In other words, unlike Mr. Edelman, Mr. Levitt gave up all
rights to use his name in connection with his business forever.  Also, Mr. Levitt knowingly and
intentionally violated the terms of the agreement on two occasions and even conceded that his use of the
Levitt name violated the agreement.  *Id.* at 466.  The *Levitt* case is entirely inapposite.

**C.    Because Plaintiff Has Not Demonstrated a Likelihood of Success on the Merits, It May Not Rely on a Presumption of Irreparable Harm**

Maxwell Shoe relies on a presumption of irreparable harm, but a party does not receive the benefit of a presumption of irreparable harm merely by alleging a claim of trademark infringement - - it must demonstrate a likelihood of success on the merits.  *The Alta Vista Corp., Ltd. v. Digital Equipment Corp.,* 44 F.Supp.2d 72, 75 (D.Mass. 1998) (citing *Camel Hair and Cashmere Institute of America, Inc. v. Associated Dry Goods Corp.*, 799 F.2d 6, 14-15 (1st Cir. 1986).  Since plaintiff has failed entirely to demonstrate likelihood of success on the merits, it cannot rely on a presumption of irreparable harm.

Notably, plaintiff has not demonstrated by any independent evidence that it would be irreparably harmed by Mr. Edelman's continued use of his two marks.  Plaintiff's only "evidence" on this important issue is one conclusory statement in a declaration with no supporting evidence.  (*See* Monks Decl. ¶ 23).  Significantly, plaintiff cannot point to a single instance of actual consumer confusion.  (Maxwell Br. p. 12)

Moreover, Maxwell Shoes' conduct belies any claim of irreparable harm.  Maxwell Shoe had actual knowledge via an industry publication back in January that Mr. Edelman was reentering the shoe business.  (Monks Decl. ¶ 25).  It took no action at that time.  Maxwell Shoe attended a trade show in February at which Mr. Edelman introduced his new shoe lines to the trade.  (Edelman Decl. ¶ 18).  Maxwell Shoe took no action at that time.  Maxwell Shoe and Mr. Edelman both attended another trade show in March at which Mr. Edelman exhibited his SAMMY E and SAM EDELMAN brands of shoes.  *Id.*  Maxwell Shoe took no action at that time.  Indeed, Maxwell Shoe did not even protest or comment on Mr. Edelman's use of his new brand names at those shows.  *Id.*

This conduct is inconsistent with a party that now claims it is suffering irreparable harm. Having failed to demonstrate irreparable harm, Maxwell Shoe is not entitled to a preliminary injunction.

**D.    An Injunction Would Severely Disrupt Mr. Edelman's Business and Would Cause Substantial Harm**

The continued use by defendants of their two marks during the pendency of this action would not cause any harm to plaintiff.  However, a preliminary injunction against defendants' use of the marks would be devastating to Edelman Shoe.  The company has sold approximately 70,000 pairs of shoes to its direct customers, including major retailers such as Nordstrom's. (Edelman Decl. ¶ 19).  The wholesale value of these goods is approximately $2,000,000.  *Id.* Some of these goods are already in transit while others are presently being manufactured.  *Id.*

If Edelman Shoe is enjoined from delivering these goods to its customers, the company would lose its investment in the products and its relationship with customers would be severely impaired.  (Edelman Decl. ¶ 19).  Customers would lose confidence in Edelman's Shoes' ability to timely deliver its goods, which could destroy the company's reputation.  *Id.*  Also, an injunction at this stage would threaten the company's ability to obtain critical financing, which, if unavailable, would likely force the company out of business.  *Id.*

Accordingly, the balance of the harms weighs heavily in support of the defendants.

**E.    There is no Likelihood of Confusion, and Therefore No "Public Interest" to Protect**

As the cases cited by plaintiff at page 17 of its brief demonstrate, this factor is relevant only where the plaintiff has demonstrated a likelihood of success on the merits.  Here, there is no likelihood of confusion and therefore no "public interest" to protect.

IV.    CONCLUSION

Maxwell Shoe is attempting to obtain through litigation something that it did not bargain for and did not receive through negotiation of the terms for the sale of the SAM & LIBBY trademark eight years ago - an absolute prohibition on Mr. Edelman's use of his name for footwear. For the reasons discussed herein, Mr. Edelman has the right to use his name as he is presently doing, and therefore, defendants respectfully submit that the motion for preliminary injunction be denied.

Respectfully submitted,

EDELMAN SHOE COMPANY, LLC and
SAM EDELMAN

By its counsel,

Dated: May 14, 2004

_____
Jeffrey L. Snow (BBO# 566388)
jsnow@kl.com
Robert T. Milanette (BBO# 641149)
rmilanette@kl.com
Christopher Centurelli (BBO# 640974)
ccenturelli@kl.com
KIRKPATRICK & LOCKHART LLP
75 State Street
Boston, Massachusetts 02109
617.261.3100  phone
617.261.3175  fax

Of Counsel:

Mark I. Peroff
mperoff@kl.com
Darren W. Saunders
dsaunders@kl.com
KIRKPATRICK & LOCKHART LLP
599 Lexington Avenue
New York, New York  10022

212.536.3900  phone
212.536.3901  fax

## <u>CERTIFICATE OF SERVICE</u>

I, Christopher Centurelli, hereby certify that the foregoing DEFENDANTS EDELMAN SHOE COMPANY, LLC and SAM EDELMAN'S MEMORANDUM IN OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION, was served by hand, this 14th day of May, 2004, upon counsel for the Plaintiff:

> Michael A. Albert, Esq.
> WOLF, GREENFIELD & SACKS, P.C.
> 600 Atlantic Avenue
> Boston, Massachusetts 02210

_____
Christopher Centurelli
