IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

MAXWELL SHOE COMPANY, INC.,

       Plaintiff,

v.

EDELMAN SHOE COMPANY, LLC and
SAM EDELMAN,

       Defendants.

Civil Action No. 04-10694 RCL

## DECLARATION OF SAM EDELMAN

I, Sam Edelman, hereby declare as follows:

1.     I am Chief Executive Officer and President of Edelman Shoe Company LLC. and a defendant in the above captioned lawsuit. I submit this Declaration in support of our opposition the Plaintiff's Motion for a Preliminary Injunction.

2.     Although the Edelman Shoe Company is a new business, I have been actively engaged in the design, manufacture, and marketing of fashion footwear for men, women, and children for over 30 years. In fact, my family has been involved in the footwear industry for three generations.  Even before I was old enough to work,  I spent countless hours in my father's and grandfather's leather tanning and shoe manufacturing company learning first hand about all facets of the footwear business ranging from the purchase of leather hides, the tanning process, footwear design, and marketing. I considered the footwear business to be fascinating as a young child and still do today.

3.    My career in the shoe business officially began in 1975 when I, with my father's financial assistance, started a new business manufacturing shoes for the well known Stride-Rite company. In addition to producing private label shoes for Stride-Rite, we developed our own brand called LIGHTHOUSE and became the first footwear licensee of the RALPH LAUREN® brand.

4.    After running our own business and prior to establishing Sam & Libby, Inc. I held a number of positions with well known footwear companies. I was the Director of new business development and opened of retail shoe stores for El Greco Footwear Company (owner of the owner of the famous CANDIES® shoe brand), was co-founder of Kenneth Cole, and President the footwear Division of Esprit Corporation.

5.    I was hired by Esprit's newly formed footwear division to create a premium brand of footwear under the ESPRIT® label. I am proud to say that sales of our ESPRIT shoes exceeded $65 million in the last of the four years that I was with the company.

6.    I left Esprit in 1987 to join my wife Libby in the founding our own footwear company Sam & Libby Footwear, Inc. which launched the SAM & LIBBY® line of shoes. Our SAM & LIBBY business was enormously success. Although no one person is responsible for the success or a failure of a business, I believe and have been told that a very significant reason for our success was my instinctive sense of being able to design a line of shoes which is current and addresses the footwear needs of consumers. In fact, I am frequently identified in the trade and in the press as a shoe man who offers fashion at a price. Simply stated, designing and selling fashion footwear is what I do best.

7.    As a result of hard work and my ability to recognize and fulfill the needs of consumers in the fashion shoe business, Sam & Libby company enjoyed great success. I, along

with my wife, were voted "People of the Year" in Footwear New Magazine in 1990 and

"Entrepreneurs of the Year" by Ernst & Young in 1989.

8.    In 1996, my wife and I wished to spend more time with our family and to pursue

other interests which were less demanding on our time while our children were young. We

decided to sell the SAM & LIBBY business to the Maxwell Shoe Company, but I knew I would

return to the shoe business some day when my children were older.

9.    Since reputation is very important in the shoe business, it was absolutely critical

that I retained the unfettered right to use my name on and in connection with footwear or any

other products for that matter. I never had any intention to convey my name SAM EDELMAN.

I was only willing to sell the SAM & LIBBY brand name if I could use my name in connection

with sale of footwear at the conclusion of a reasonable period of time after the sale of the SAM

& LIBBY brand.

10.    I agreed with Maxwell that I would not use my name or any similar names on

footwear or apparel for three years from the sale of the SAM & LIBBY brand. I recall that the

three-year period was decided by the parties to be a sufficient period of time for Maxwell to

disassociate the SAM & LIBBY brand from us and to develop their own designs and style for the

brand. There were no restrictions on the use of my name on footwear products after the three-

year period, which expired on July 26, 1999. While it is true that Maxwell paid $5.5 million

dollars for our trademark, I believe that the price paid was quite low when considering the value

of the brand that that time and its future earning power. I estimate that Maxwell sales of SAM &

LIBBY shoes during the past 8 years has exceeded $150,000,000, creating profits of roughly

$20,000,000 that period of time.

11.    In full compliance with the terms of my agreement with Maxwell, I established a new shoes business in 1999 using the brand name NAKED FEET BY SAM EDELMAN. As with my former footwear lines, the products were carried by major retailers, including Nordstrom's, Neiman Marcus, Burdines, Bloomingdale's, Macy's, and Victoria's Secret. My name was prominently used in connection with the Naked Feet line of shoes introduced in the fall of 1999. For example, attached as Exhibit A is a copy of a page from the November 1999 issue of Marie Claire magazine, showing one of my shoes with the phrase "SAM EDELMAN FOR NAKED FEET." At no time did Maxwell object to the use of my name as a part of my trademark. Although our shoes sold quite well, production, management, and funding problems resulted in our ceasing operations in 2000.

12.    In July, 2003, I decided to reenter the footwear business and purchased the assets of a shoe business named Rock Studio, located in Harrisburg, Pennsylvania. In keeping with my past image in the footwear field, my business is once again focused on providing consumers with "fashion footwear at price". I noticed a void in the current market - - there is an absence of high quality designer footwear at affordable prices. My customer is a woman who is driving a Mercedes, she's got 2.2 kids and would like to spend $400 on her shoes, but she just can't.

13.    In light of the reputation which I have garnered through the past 29 years, I thought it would be appropriate at this stage of my professional career to incorporate my name into the brand name of my footwear. Initially, I wished to use the names SAM BY SAM EDELMAN for my better shoes line and SAMMY E for my more popular price shoes. Before adopting these names, I consulted with counsel to assess whether these names were available for use and registration as trademarks. I provided counsel with a copy of the Trademark and Intellectual Property Rights Purchase and Sale Agreement with Maxwell. Based upon counsel's

assessment, I adopted these names as my trademarks and filed applications for Federal registration of both marks with the U.S. Patent & Trademark Office.

14.     After filing the trademark applications, I consulted with one of my major retail customers regarding the name SAM BY SAM EDELMAN. Upon further consideration, I decided to change the brand name, SAM BY SAM EDELMAN, to SAM EDLEMAN for my better shoe line as it was less repetitive.

15.     The footwear sold by Maxwell Shoe is very different from the new line of footwear that I have designed for sale under the brand names SAMMY E and SAM EDELMAN. Maxwell's Shoes are categorized by the trade as "junior moderate" targeted mainly to teens. In contrast, my shoes fall within the "contemporary designer and better" category targeted to women aged 25-55. The shoes are often original in designs. In department stores, these two categories of footwear are sold in two separate departments.

16.     Even if Maxwell Shoes' and my new line of shoes were in the same market category and sold at the same pricepoint, there would be no confusion as to the source of our respective shoes. The trade, including professional buyers, would not be confused, as they are quite knowledgeable of which company manufactures and sells a particular brand and they are well aware that Maxwell shoe owns the SAM & LIBBY brand. At the consumer level, purchasers are faced with an overwhelming array of brand names for shoes in the market place. In the contemporary designer and better category alone, there are approximately 50 brands, many of which are, or include, proper names such as ANN MARINO, ANNE JORDAN, ANNE KLEIN, ANNE MICHELLE, CHARLES ALBERT, CHARLES DAVID, NANCY GEIST, NANCY LI, etc.

17.    I have no desire for my shoes to be associated with Maxwell Shoe or with the SAM & LIBBY brand. My only desire is for them to be associated with me. The brand names SAMMY E and SAM EDELMAN are very different in sound and appearance from SAM & LIBBY. Also, the label logos we are using are very different from the SAM & LIBBY logo. (See Exhibit B).

18.    As stated above, I did not sell my name and my reputation in the footwear industry to Maxwell Shoe, but only one brand that was created many years ago. I do not understand why Maxwell Shoe has brought this lawsuit, as I believe the Agreement is quite clear that I may use my name on or in connection with shoes, which is what I am doing now, and what I did back in 1999. Also, I am surprised by the lawsuit because I attended major trade shows to exhibit my new lines of shoes. For example, I attended the WSA show in Las Vegas in February, 2004 and the Miami Shoe Show in March, 2004. Maxwell Shoe was also at these shows but did not contact me or complain about my use of the brand names SAMMY E or SAM EDELMAN. Instead, Maxwell elected to file a lawsuit against me and my company without first contacting me. What is more disturbing is a press release issued by Maxwell Shoe a copy of which is attached hereto as Exhibit C. This release was, in my opinion, calculated to cast doubt in the minds of my customers and the trade generally as to whether I would be able to market my new lines of shoes under the trademarks SAMMY E and SAM EDELMAN. Moreover, I believe that this release was an attack upon my integrity.

19.    Edelman Shoe has approximately 70,000 pairs of shoes, with a wholesale value of about $2,000,000, sold to numerous retailers throughout the country, including Nordstrom's. Some of these products are currently being shipped, while others are in the manufacturing process. Edelman Shoe is committed to delivering these products to retailers beginning in early

July. If we are enjoined from delivering these shoes to our customers, my company and I will incur severe harm. First, we will loose our investment in the shoes which have been produced, which would be devastating to our business. Second, the company's reputation would be seriously damaged, as our retailers would lose confidence in Edelman Shoe's ability to deliver its goods. In addition, the stores will lose money on the goods that were ordered but which could not be delivered for sale. Third, our manufacturing agent, which provides financing to the company, is very concerned by the lawsuit, which threatens our ability to receive additional funding. If the company is enjoined from delivering the 70,000 pairs of shoes which have been ordered, I believe this would put the company out of business.

20.    I have reviewed the Declaration of Roger Monks and Plaintiff's Memorandum in Support of Its Motion for Preliminary Injunction. Maxwell Shoe suggests that my recent offer to buy back the SAM & LIBBY Mark somehow is relevant to their claims in the lawsuit. This is not true. I inquired about purchasing the SAM & LIBBY Mark specifically because I had been approached by a group of individuals confidentially about developing a lifestyle collection for a mass market retailer, similar to Isaac Mizrahi for Target. One of these individuals had asked me to see if the SAM & LIBBY name was available for this potential project, which is the reason why I contacted Maxwell Shoe. My offer to purchase the SAM & LIBBY brand name was not related in any way to Edelman Shoe's use of the SAMMY E and SAM EDELMAN brand names for my new lines of shoes.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: *May 14, 2004*                          *Sam Edelman*
                                                Sam Edelman

7

# EXHIBIT A



marie claire



the zebra-stripe tote

the kitten-heel pump

the turtleneck sweater

the tab-front, wide-leg pant

$350

$1405

$595

$238

$300

$240

$395

$165

$160

$88

$132

$58

# EXHIBIT B







## UNITED STATES PATENT AND TRADEMARK OFFICE

| Home | Index | Search | System Alerts | eBusiness Center | News & Notices | Contact Us |

## Trademark Electronic Search System(Tess)

*TESS was last updated on Thu Mar 11 04:25:42 EST 2004*

| PTO HOME | TRADEMARK | TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | BOTTOM | HELP | PREV LIST |
| CURR LIST | NEXT LIST | FIRST DOC | PREV DOC | NEXT DOC | LAST DOC |

Logout  Please logout when you are done to release system resources allocated for you.

Start  List At: [        ]  OR  Jump  to record: [        ]  **Record 9 out of 10**

Check Status  *(TARR contains current status, correspondence address and attorney of record for this mark. Use the "Back" button of the Internet Browser to return to TESS)*

# SAM & LIBBY

| | |
|---|---|
| **Word Mark** | SAM & LIBBY |
| **Goods and Services** | IC 025. US 039. G & S: footwear. FIRST USE: 19880101. FIRST USE IN COMMERCE: 19880101 |
| **Mark Drawing Code** | (3) DESIGN PLUS WORDS, LETTERS, AND/OR NUMBERS |
| **Design Search Code** | 241714 260721 |
| **Serial Number** | 74085089 |
| **Filing Date** | August 6, 1990 |
| **Current Filing Basis** | 1A |
| **Original Filing Basis** | 1A |
| **Published for Opposition** | March 12, 1991 |
| **Registration Number** | 1646905 |
| **Registration Date** | June 4, 1991 |

# EXHIBIT C

# INTELLECTUAL PROPERTY
## LAW BULLETIN

Search news

Log in
Log out
My profile

**Practice areas**
Copyrights
Patents
Licensing
Trade secrets
Trademarks

**Industries**
Autos,
aerospace,defense
Agriculture
Financial services
Healthcare &
pharma
Retail,consumer
goods
Media &
entertainment
Tech, telecom,
electronics

**Regions**
Africa & Middle East
Asia, Australia, NZ
Europe
Latin America
North America
Developing
countries

**Litigation**
New lawsuits
Rulings
Settlements
Verdicts and
Judgments

**Venues**
European Court of
Justice
U.S. District Courts

# Shoe Company Sues Designer Over Trademark

*IP Law Bulletin (Thursday, April 22, 2004)*--A shoe company has filed a lawsuit in the District of Massachusetts against a designer it says infringed on its trademarks and engaged in unfair trade practices.

Maxwell Shoe Company Inc. sued Edelman Shoe Company and its President, Sam Edelman, alleging trademark infringement, false designation of origin, and dilution under the federal Lanham Act, as well as unfair trade practices, unfair competition, breach of contract, and trademark dilution under Massachusetts law.

Maxwell Shoe is seeking damages, including treble damages under the Lanham Act, among other provisions, as well as attorneys' fees and costs. The company is also seeking a preliminary and permanent injunction against Edelman on the ground that the infringing products subject Maxwell Shoe's image, reputation and market position to "irreparable harm," according to the complaint.

Maxwell Shoe, which owns the Sam & Libby trademark, said it filed this lawsuit in connection with Edelman and Sam Edelman's efforts to market a line of footwear using the marks "Sammy E" and "Sam By Edelman."

Maxwell Shoe purchased the trademark Sam & Libby in 1996 from Sam Edelman, then President and Chief Executive Officer of Sam & Libby, Inc., the company that previously sold footwear under that mark.

"This purchase includes all rights and goodwill in the trademarks Sam & Libby, Sam & Libby Kids, and Just Libby," Maxwell Shoe said in a statement.

**Latest IP news**

**House Panel Passes False Identity Bill**
*Friday, May 14, 2004*

**Canada To Ratify WIPO Treaties**
*Friday, May 14, 2004*

**OECD Ministers Greenlight Major IP Research Project**
*Friday, May 14, 2004*

**Canada To Pass Generics Bill Friday**
*Friday, May 14, 2004*

**Judge Deals Blow to Qualcomm In Suit Over CDMA Licensing**
*Friday, May 14, 2004*

**Monsanto Sues Syngenta Over Patent For Gene Modified Corn**
*Friday, May 14, 2004*

**Gateway To Pay $10M To Settle Intergraph Patent Suit**
*Friday, May 14, 2004*

**Abbott Faces Calls For Compulsory License For Norvis**
*Friday, May 14, 2004*

**Kao Sues Eastman Kodak Unit Over Toner Patent**
*Wednesday, May 12, 2004*

**Prosecutors Charge Third Boeing Employee In Trade Secret Probe**
*Wednesday, May 12, 2004*

**Congress Panel Hears Arguments Over Amending DMCA**
*Wednesday, May 12, 2004*

**University of California Defends Eolas Patent**
*Wednesday, May 12, 2004*

**Cephalon Plans To File Patent Suit Vs Sandoz Over Provigil ANDA**
*Tuesday, May 11, 2004*

**U.S. Federal Circuit**
**U.S. Int'l Trade**
**Commission**

**Hot topics** ............
**Piracy &**
**enforcement**
**People in the news**
**Policy and**
**regulation**
**Surveys & statistics**

According to the complaint, Maxwell Shoe alleges the "Sammy E" and "Sam by Sam Edelman" marks are likely to cause confusion among consumers given the similarity of the goods sold under Maxwell Shoe's and Edelman's marks and the similarity in channels of trade for the goods, advertising and purchasers.

Sam Edelman developed the shoe division of Esprit, but in 1987, after new management cut his compensation, he and Louise (head of Esprit's children's shoes division) mortgaged their home and started a shoe company. Their first product, a ballet flat, was a big success, and they added to the women's line and introduced girls' shoes.

Maxwell Shoe is represented in this matter by attorneys for Wolf, Greenfield & Sacks, PC.

The case is Maxwell Shoe Company, Inc. v. Edelman Shoe Company, LLC et al, 1:04-cv-10694-RCL, U.S. District Court for the District of Massachusetts.

Questions? Comments? E-mail the editor.

**Activists Protest E.U.**
**Handling Of Software**
**Patent Bill**
*Tuesday, May 11, 2004*

**ArvinMeritor Wins**
**Patent Interference**
**Vs. Eaton**
*Tuesday, May 11, 2004*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing DECLARATION OF SAM EDELMAN, was served by hand, postage prepaid, this 14th day of May, 2004, upon counsel for the Plaintiff:

>Michael A. Albert, Esq.
>WOLF, GREENFIELD & SACKS, P.C.
>600 Atlantic Avenue
>Boston, Massachusetts  02210

_____
Christopher Centurelli